IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIM R. TIHEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number: |
| ) | |
| CITY OF BELLEFONTAINE ) | |
| NEIGHBORS/ BELLEFONTAINE ) | |
| NEIGHBORS POLICE DEPARTMENT, ) | *Jury Trial Demanded* |
| ) | |
| and ) | |
| ) | |
| MAYOR ROBERT J. DOERR, in his ) | |
| individual and official capacities, ) | |
| ) | |
| and ) | |
| ) | |
| DENI DONOVAN, in her individual ) | |
| and official capacities, ) | |
| ) | |
| and ) | |
| ) | |
| CHIEF JEREMY IHLER, in his ) | |
| individual and official capacities, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| Serve at: ) | |
| ) | |
| City of Bellefontaine Neighbors ) | |
| 9641 Bellefontaine Road ) | |
| St. Louis, Missouri 63137. ) | |

## **COMPLAINT FOR DAMAGES**

### **Nature of the Claim**

This is an action pursuant to 42 U.S.C. §2000e *et. seq.* -Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981 and 1983, and also § 213.010 RSMo. for gender/sex discrimination, disparate treatment and retaliation as against Plaintiff KIM R.

1

TIHEN during her employment with the City of Bellefontaine Neighbors through the Bellefontaine Neighbors Police Department.

## Parties and Jurisdiction

1. Plaintiff Kim R. Tihen (hereinafter "Kim") is a resident of the City of Troy, Illinois and a citizen of the United States of America. At all times relevant herein, Kim was employed by the City of Bellefontaine Neighbors, through the Bellefontaine Neighbors Police Department (hereinafter "Department"), located in the City of Bellefontaine Neighbors, County of St. Louis, State of Missouri, and in the Eastern Division of the Eastern District of Missouri.

2. Defendant City of Bellefontaine Neighbors, Missouri (hereinafter "City") is a municipal corporation organized and existing under the laws of the State of Missouri.

3. Defendant Mayor Robert J. Doerr (hereinafter "Mayor Doerr") was at all times relevant herein and still remains the City's duly elected Mayor. Mayor Doerr has certain executive and supervisory authority over all facets of the City. He is being sued in his individual and official capacities.

4. Defendant Deni Donovan (hereinafter "Donovan") was at all times relevant herein the City Clerk. Donovan had ultimate supervisory authority over all facets of the City, to include the Department. She is being sued in her individual and official capacities.

5. Defendant Jeremy Ihler (hereinafter "Ihler") was at all times relevant herein and still remains the Department's Chief of Police. Ihler has ultimate supervisory authority over all facets of the Department. He is being sued in his individual and official capacities.

6. The adverse employment actions Kim suffered as set forth in more detail below occurred in the City of Bellefontaine Neighbors, State of Missouri, within the Eastern Division of the Eastern District of Missouri.

2

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide any claims arising under state law pursuant to 28 U.S.C. §1367.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

9. Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## Factual Allegations

10. All conditions precedent to the institution of this lawsuit has been fulfilled. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission- St Louis, Missouri Division (hereinafter "EEOC") on October 19, 2016. A copy of Plaintiff's Charge of Discrimination (Charge No. 560-2016-01999) is attached hereto and incorporated by reference herein as Exhibit A. The EEOC issued its Notice of Right to Sue to Plaintiff on April 27, 2017 more than 180 days after the filing of the underlying Charges. A copy of Kim's Notice of Right to Sue is attached hereto and incorporated by reference herein as Exhibit B. The present action is being brought within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue correspondence as generated by the EEOC.

11. Kim had been an employee of the Department since January of 2013 as a police officer. Kim was rapidly promoted to the Bureau of Investigations in 2014. Until September of 2016, Kim served as the only female police investigator, or to use more common police vernacular- "Detective".

12. Throughout her employment with the City, Kim performed her duties in a satisfactory or above-level manner.

3

13. Mayor Robert J. Doerr serves as the primary elected authority for Defendant City of Bellefontaine Neighbors. His position includes working with other city officials and employees to plan, propose and execute policy.

14. Upon her promotion to the position of Detective in 2014, Kim began to be subjected to a series of sexist and personally disparaging comments by Mayor Doerr that continued throughout her employment. These comments were centered on her appearance as a female employee. Over time, Mayor Doerr's comments increased in both frequency and intensity. These comments included the Mayor's expectations of a female officer's appearance and demeanor, which were different from his expectations of a male officer's appearance and demeanor.

15. Mayor Doerr continued directing inappropriate comments towards Kim in 2015 and into 2016. Initially, these comments were more universally applied as to a "female" officer or women in general. Over time, these comments developed into specific comments about Kim's own appearance as a female officer.

16. In 2015 and into 2016, Mayor Doerr repeatedly engaged Kim in conversation regarding his opinion as to what he expected a "female employee" to look like in "his city". Mayor Doerr would later disparage Kim's own appearance as he believed that she fell short of his personal requirements. Mayor Doerr's comments about Kim's appearance included a dislike of her hairstyle and grooming because they were not feminine enough.

17. Mayor Doerr used both physical and mental intimidation as he directed the inappropriate comments towards Kim. Specifically, Mayor Doerr used physical posturing, gestures and positioning (invasion of personal space) in an effort make Kim feel uncomfortable.

18. In July of 2016, Mayor Doerr became involved in Kim's performance evaluation where he specifically commented on her appearance as a female employee. Mayor Doerr's comments were aligned with those he levied over the past several months, and specifically included

his opinion as to Kim's hair-style, facial mannerisms (smile), and femininity. Mayor Doerr indicated to Kim that he had been "watching her".

19. Mayor Doerr's inappropriate comments regarding Kim's appearance did not mirror those of her immediate supervisor, Lt. Shawn Applegate. To the contrary, Kim's professional demeanor and appearance were never in issue.

20. Mayor Doerr's comments regarding Kim's appearance as a female employee were in violation of the Department's General Order 2-18 where it provides, in pertinent part, that personal likes or dislikes were not to be part of a performance evaluation.

21. Mayor Doerr's involvement in a Department employee's performance evaluation absent direct involvement in said employee's actual performance was a deviation from City Policy, Department General Orders and/or Codes of Ordinances, thus creating an effective new policy centered on discrimination.

22. In July of 2016, Kim reported her concerns to Chief Ihler. Chief Ihler serves as the primary authority in all aspects of administering the Department. Chief Ihler indicated to Kim that there was nothing he could do with this matter as it involved the Mayor, and otherwise refused to assist Kim in that regard. Chief Ihler had an obligation to protect Kim from the Mayor's behavior.

23. In July of 2016, Kim also reported her concerns regarding Mayor Doerr's latest comments on her appearance to her immediate supervisor, Lt. Shawn Applegate. As opposed to Chief Ihler, Lt. Applegate agreed to meet with Kim and Mayor Doerr for purposes of registering a complaint with Mayor Doerr's office.

24. Kim specifically requested a meeting with both Mayor Doerr and Lt. Applegate in August of 2016. Mayor Doerr denied Kim's request for Lt. Applegate to attend said meeting.

25. On August 2, 2016, Mayor Doerr met with Kim at his office. During this encounter, Mayor Doerr again used physical and mental intimidation as a means to persuade Kim to leave the

5

issue alone. Mayor Doerr explained to Kim that he did not like her hair-style and the fact that she didn't always smile while working as a police detective. Kim understood that the Mayor had added such comments to the performance evaluation and asked if he did the same with other employees. Mayor Doerr acknowledged that he had not made such comments on other "officers'" evaluations.

26. During the August 2, 2016, Kim requested that Mayor Doerr remove any comments regarding her appearance from the evaluation. Mayor Doerr refused. Mayor Doerr further made clear that if Kim's followed through with a formal complaint, said complaint would be unsuccessful because he didn't have to follow the rules.

27. On August 2, 2016, Kim issued an official written complaint to the City wherein she cited Mayor Doerr's behavior as workplace harassment and requested an investigation.

28. The City Clerk, Deni Donovan, serves as the primary managerial authority for Defendant City of Bellefontaine Neighbors. This position includes working with other city officials and employees to plan, propose and execute policy.

29. On August 9, 2016, Kim received notice from the City Clerk's office, Deni Donovan, that the written complaint was received and that the "…report of harassment will be investigated thoroughly and promptly".

30. In the August 9, 2016 notice, Deni Donovan also acknowledged the City's "Harassment Policy" which mandated an investigation and set forth the protocol by which harassment is to be addressed by the City.

31. Mayor Doerr expressly violated the City's Harassment Policy via his comments and behavior towards Kim and other employees.

32. Deni Donovan failed to follow the City's Harassment Policy by not conducting the investigation in the manner required.

6

33. Mayor Doerr and Deni Donovan concluded during their investigation of themselves that there was no harassment. As such, Mayor Doerr and Deni Donovan conspired to deprive Kim any internal redress for Mayor Doerr's behavior. Accordingly, the Defendants refused to take any action to correct the issue with Mayor Doerr.

34. Mayor Doerr, with the assistance of other officials, isolated Kim from her peers, and otherwise subjected Kim to disparate treatment and retaliation. Other female Department employees were not subjected to similar treatment.

35. Mayor Doerr engaged in a series of actions designed to punish Kim for registering her complaint regarding his comments and behavior with the City Clerk. This created a hostile working environment of such an egregious nature that Kim elected to resign her position.

36. Collectively, Defendants have engaged in illegal discrimination against Plaintiff because of her gender.

37. Defendants have engaged in acts of retaliation against Plaintiff following her decision to complain about Mayor Doerr's behavior and the City Clerk's subsequent response.

38. Plaintiff has been treated differently than similarly-situated employees by Defendants in the terms and conditions of her employment because of her gender.

39. Defendants Mayor Robert J. Doerr, Deni Donovan, and Chief Jeremy Ihler at all times alleged herein were acting as agents of Defendants and acting within the course and scope of their employment or elected authority. The actions of the Defendants and employees as alleged above were intentional.

40. The actions of the Defendants and Defendant-employees as alleged above were done with malice and/or reckless indifference to the federally protected rights of Plaintiff.

41. As a direct and proximate result of the acts of the Defendants as alleged herein, Kim subjected to disparate and unequal treatment based on her gender, retaliation, although well qualified, was deprived of future promotional opportunities. Additionally, and without waiver of the foregoing, Kim has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of professional reputation.

## Count I
## Gender Discrimination

42. Plaintiff Kim R. Tihen hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 41 above as if fully set forth herein.

43. The conduct of Defendants and their employees, as alleged above, affected a term, condition or privilege of the Plaintiff's employment.

44. The disparate treatment of the Plaintiff, as practiced by Defendants and Defendant-employees, as alleged above, was of a sexually discriminatory nature, and/or discrimination based on Plaintiff's gender.

45. The sexual/gender discrimination of Plaintiff by Defendants and their employees, as alleged above, was sufficiently pervasive and severe to create a discriminatory work environment for the Plaintiff.

46. The conduct of Defendants and their employees, as alleged above, was engaged in while in the scope of, and during their course of, employment.

47. Defendants were fully informed, or should have been fully informed, to have had sufficient knowledge of the material facts and circumstances relevant to the conduct of Defendants and their employees, and did nothing to prevent further acts of misconduct, acquiesced in, approved and ratified the actions of their employees, and are therefore liable for the actions of their employees.

48. The conduct of Defendants and their employees, as alleged above, constitutes sexual/gender discrimination in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1963 and the Civil Rights Act of 1991, and in violation of 42 U.S.C. 2000-e2 (a) (1) in that such actions created disparate treatment on account of her sex, that being female.

49. The actions of the Defendant and their employees were intentional.

50. The actions of the Defendant and their employees, as alleged above, were intentional and demonstrated a willful, wanton, and/or reckless indifference and disregard to the rights of the Plaintiff such that punitive damages should be assessed against Defendants.

51. As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered economic loss in the form of lost wages, lost benefits and related consequential damages; vocational and professional losses in the form of a detrimental job record, career damage, a diminished career potential and future pecuniary losses; emotional pain, suffering, inconvenience, loss of enjoyment of life, and mental distress, in the form of physical stress, embarrassment, humiliation and anxiety.

WHEREFORE, Plaintiff Kim R. Tihen prays this Court enter judgment in her favor and against the Defendants and thereafter order Defendants to make her whole by granting her equitable relief to include but not necessarily be limited to awarding her damages for any and all losses or damages she has suffered, including any lost wages as a result of being forced to resign, lost promotional opportunities; awarding damages to Plaintiff for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation; awarding Plaintiff punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiff the costs of this action, together with her reasonable attorneys' fees; and granting such other and further relief as may appear to the Court

to be equitable and just under the circumstances.

## Count II
## Retaliation

52. Plaintiff Kim R. Tihen hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

53. Defendants intentionally engaged in unlawful employment practices by discriminating against the Plaintiff based upon retaliation for having complained about sex/gender discrimination, that being disparate treatment, all in violation of Title VII of the Civil Rights Act of 1964 as amended, (1991), 42 U.S.C. §2000e-5(f).

54. As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered economic loss in the form of lost wages, lost benefits and related consequential damages; vocational and professional losses in the form of a detrimental job record, career damage, a diminished career potential and future pecuniary losses; emotional pain, suffering, inconvenience, loss of enjoyment of life, and mental distress, in the form of physical stress, embarrassment, humiliation and anxiety.

55. As a further direct and proximate result of Defendant's unlawful acts, Plaintiff is also entitled to such affirmative relief as may be appropriate including but not limited to permanent injunction, lost wages and benefits, and her reasonable attorney's fees incurred herein, pursuant to the provisions of federal law as cited above.

56. The discrimination described herein above against Plaintiff by Defendants was intentional, willful, wanton, malicious, and/or reckless disregard and indifference to the rights of others, thus entitling Plaintiff to exemplary or punitive damages.

WHEREFORE, Plaintiff Kim R. Tihen prays this Court enter judgment in her favor and against the Defendants and thereafter order Defendants to make her whole by

granting her equitable relief to include but not necessarily be limited to awarding her damages for any and all losses or damages she has suffered, including any lost wages as a result of being forced to resign, lost promotional opportunities; awarding damages to Plaintiff for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation; awarding Plaintiff punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiff the costs of this action, together with her reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

## Count III
## Violation of Plaintiff's Rights Secured by 42 U.S.C. § 1981

57.     Plaintiff Kim R. Tihen hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants actions forced Plaintiff to resign her position. Accordingly, Defendants actions deprived Plaintiff of future promotional opportunities based on her gender, despite the fact that she was qualified, and directly because she complained of Mayor Doerr's behavior.

59.     Plaintiff's gender was the determining factor, motivating factor, or played a part in the Defendants' actions.

60.     Any stated reason for Defendants actions, or lack thereof, as it relates to Plaintiff's complaints, and threat of jeopardizing Plaintiff's career, was not the real reason, but rather a pretext to hide race discrimination.

61. As a direct and proximate result the acts of the Defendants as alleged herein, Plaintiff will likely lose promotional opportunities as a result in the future. Additionally, and without waiver of the foregoing, as a direct and proximate result of the acts of the Defendants as alleged herein, Plaintiff has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation.

62. The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Plaintiff's statutory rights as set forth above, justifying an award of punitive damages against the Defendants in their individual and official capacities to punish them and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Kim R. Tihen prays this Court enter judgment in her favor and against the Defendants and thereafter order Defendants to make her whole by granting her equitable relief to include but not necessarily be limited to awarding her damages for any and all losses or damages she has suffered, including any lost wages as a result of being forced to resign, lost promotional opportunities; awarding damages to Plaintiff for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation; awarding Plaintiff punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiff the costs of this action, together with her reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

## Count IV
## Conspiracy to Violate Civil Rights

63. Plaintiff Kim R. Tihen hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 62 above as if fully set forth herein.

64. Defendants, acting under color of state law, conspired together and amongst themselves and as a result reached a mutual understanding to deny Plaintiff, a female patrol officer equal protection under the law by failing to investigate a claim of harassment, threatening sanction for complaining and otherwise shielding a female employee from undue discrimination, all based on gender, and then to engage in a series of retaliatory actions and otherwise disparate treatment as a means to punish Plaintiff for complaining about the Mayor's behavior. Additionally, and without waiver of the foregoing, Defendants conspired to undertake a course of conduct to protect each other from the consequences of their constitutional and statutory violations, which in furtherance of the conspiracy violated Plaintiff's constitutional right to equal protection under the laws and federal statutory rights to be free from sexual/gender discrimination.

In furtherance of this conspiracy, Defendants committed the following overt acts:

    a. Defendants, through Mayor Doerr, attempted to discourage Plaintiff from following through with a formal complaint of harassment.

    b. Defendants, through Mayor Doerr, refused to grant meeting access to Plaintiff's immediate supervisor, Lt. Shawn Applegate, as a means to dissuade Plaintiff from following through with a formal complaint, and thus resulting in Plaintiff's ultimate decision to resign.

    c. Defendants refused to provide Plaintiff a valid explanation for the decision not to properly investigate Plaintiff's complaint of harassment.

    d. Defendants, through Chief Ihler, refused to address Plaintiff's complaint about the Mayor.

13

e. Defendants, through City Clerk, Deni Donovan, failed to take appropriate action to ensure the proper investigative process was being effected by the City in a fair and equitable manner, and otherwise assisted Mayor Doerr and other employees with their efforts to shield Mayor Doerr from an investigation for harassment, and also to punish Kim for registering the complaint.

f. When Plaintiff did register an internal grievance/complaint regarding the Mayor's harassment and the manner in which it occurred, Defendants refused to properly investigate the complaint and would not even provide Plaintiff with a response to the complaints in an effort to conceal their illegal discrimination against Plaintiff.

g. Defendants engaged in the conduct as set forth herein to protect themselves from the consequences of their misconduct.

65. Defendants shared the general conspiratorial objective which was to deny Plaintiff equal protection under the law, preclude an investigation into the Mayor's harassment, and then to punish Plaintiff for complaining. Such conduct was so pervasive in the Department and Defendant City of Bellefontaine Neighbors and/or was engaged in by City and Department command rank officers with final policymaking authority, including Defendant Mayor Doerr and his staff, Defendant Deni Donovan, and Defendant Ihler and his staff such that said Defendants and those responsible for assisting them them were effectively insulated from internal sanction, and therefore, Defendants felt free to engage in the misconduct as aforementioned without any fear of sanction or retribution.

66. Defendants furthered the conspiracy by participating in it from its inception or by participating in the cover-up thereof and/or ignoring the course of conduct set forth herein so as to insulate themselves and others from liability for the outrageous and unlawful acts of the Defendants as described herein, showing a tacit understanding to carry out the prohibited conduct.

67. As a direct and proximate result of the conspiracy amongst the Defendants and in furtherance thereof, Plaintiff was thereby deprived of her constitutional right to equal protection under the laws secured by the 14th Amendment to the United States Constitution and her federal statutory right to be free from illegal discrimination as secured by Title VII of the Civil Rights Acts of 1964 and 42 U.S.C. § 1981, protected by 42 U.S.C. § 1983.

68. As a further direct and proximate result the acts of the Defendants as alleged herein, Plaintiff will likely lose other promotional opportunities as a result in the future. Additionally, and without waiver of the foregoing, as a direct and proximate result of the acts of the Defendants as alleged herein, Plaintiff has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation.

69. The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Plaintiff's constitutional and federal statutory rights as set forth above, justifying an award of punitive damages against the Defendants in their individual capacities.

WHEREFORE, Plaintiff Kim R. Tihen prays this Court enter judgment in her favor and against the Defendants and thereafter order Defendants to make her whole by granting her equitable relief to include but not necessarily be limited to awarding her damages for any and all losses or damages she has suffered, including any lost wages as a result of being forced to resign, lost promotional opportunities; awarding damages to Plaintiff for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation; awarding Plaintiff punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and

15

others from like conduct; awarding Plaintiff the costs of this action, together with her reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

## Count V
## Failure to Train, Instruct, Supervise, Control and/or Discipline
## Cognizable Under 42 U.S.C. § 1983

70. Plaintiff Kim R. Tihen hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 69 above as if fully set forth herein.

71. While Defendants City and Department purportedly have policies and procedures prohibiting discrimination and requiring employees to report discrimination, there exists within the City and Department policies or customs, practices and usages that were so pervasive that they constitute the policies of these Defendants, and those that caused the violation of Plaintiff's constitutional and federally statutory rights as set forth herein.

72. Defendant Mayor Doerr is the ultimate elected authority within the City of Bellefontaine Neighbors, his actions or refusal to act, by and with other Defendant City of Bellefontaine Neighbors employees, including Defendant City Clerk, Deni Donovan and Defendant Chief Ihler, established the policies of Defendants to foster, condone, or otherwise tolerate conduct that violates the constitutional and federal statutory rights of employees of the City and Department in general and specifically the conduct described in this Complaint. Had these Defendants acted affirmatively to properly train and supervise law enforcement personnel, to include Defendants Mayor Doerr, Deni Donovan, Chief Ihler, and those under their command or control and/or to properly discipline any personnel when they conduct themselves in ways that violate the constitutional and federal statutory rights of others, the discrimination against Plaintiff on the basis of her gender would not have occurred.

73. In an effort to protect themselves and those other Defendant City-employees engaged in acts of illegal discrimination, Defendants Mayor Doerr, Deni Donovan and Chief Ihler disregarded Plaintiff's complaints regarding Mayor Doerr's treatment of Plaintiff so that their own negligent training and supervision would not be discovered. Alternatively, and without waiver of the foregoing, Defendants collectively did so to protect themselves from the consequences of their own misconduct.

74. Similarly, Defendants City of Bellefontaine Neighbors, City Clerk Deni Donovan, Chief Ihler, and any other employees, through their defined supervisory/administrative authority, served as the policy making body governing the personnel described herein. Defendants failure to affirmatively act in the face of the transgressions described herein of which they knew or should have known, thereby established the policies of these Defendants to foster, condone and otherwise tolerate conduct that violates the constitutional and federal statutory rights of employees of the Department in general and the rights of Plaintiff as set forth in this Complaint. Alternatively, these Defendants delegated and abrogated all or part of their policymaking power. Had these Defendants affirmatively acted to properly train and/or supervise the personnel under their control and/or to properly discipline personnel under their control when they conduct themselves in ways that violate the constitutional and federal statutory rights of others, the sexual/gender discrimination against Plaintiff would not have occurred.

75. The collective actions or failures of Defendants were in violation of 42 U.S.C. § 1983.

76. In their actions or failures as above-described, these Defendants intentionally disregarded known facts or alternatively were deliberately indifferent to a risk of violating the federal rights of others, of which they knew or should have known, and their culpability caused the violation of Plaintiff's federally protected constitutional and statutory rights.

17

77. As a direct and proximate result the acts of the Defendants as alleged herein, Plaintiff was forced to resign and will likely lose other promotional opportunities as a result in the future. Additionally, and without waiver of the foregoing, as a direct and proximate result of the acts of the Defendants as alleged herein, Plaintiff has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation.

78. The conduct of Defendants was recklessly and callously indifferent to the federally established rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish these Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Kim R. Tihen prays this Court enter judgment in her favor and against the Defendants and thereafter order Defendants to make her whole by granting her equitable relief to include but not necessarily be limited to awarding her damages for any and all losses or damages she has suffered, including any lost wages as a result of being forced to resign, lost promotional opportunities; awarding damages to Plaintiff for her emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of professional reputation; awarding Plaintiff punitive damages against the individual Defendants in their individual capacities in such sum as this Court believes will serve to punish them and to deter them and others from like conduct; awarding Plaintiff the costs of this action, together with her reasonable attorneys' fees; and granting such other and further relief as may appear to the Court to be equitable and just under the circumstances.

Respectfully submitted,

THE LAW OFFICES OF JOHN M. LYNCH, LLC.

<u>E/S JOHN M. LYNCH</u>
John M. Lynch, 56604MO
7777 Bonhomme Avenue, Suite 1200
Clayton, MO 63105
(314) 726-9999 telephone
(314) 726-9199 facsimile
jlynch@lynchlawonline.com

***Attorneys for Plaintiff***

STATE OF MISSOURI            )
                             ) SS
COUNTY OF ST. LOUIS          )

I, KIM R. TIHEN, of lawful age, being first duly sworn upon my oath, state that I am the Plaintiff named above; and that the facts stated in my Complaint herein are true and accurate to the best of my knowledge, information and belief, and that I executed said Answer of my own free act and deed.

_____
**Kim R. Tihen,** Plaintiff

Subscribed and sworn to before me this 29th day of June, 2017, a Notary Public in and for said state and personally appeared **Kim R. Tihen,** known to me to be the person who executed the Complaint, and acknowledged to me that she executed the same for the purposes therein stated; that she executed the same as her free act and deed and stated that the facts contained therein are true and correct to the best of her knowledge, information and belief.

My term expires:

JESSICA OLSEN
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: November 05, 2017
Commission Number: 13544174

_____
Notary Public

### Certificate of Service

I, the undersigned, hereby certify that a copy of the foregoing was mailed postage pre-paid to: King, Krehbiel & Hellmich, LLC., Attorneys for Defendants, 2000 South Hanley Road, St. Louis, MO 63144, on this ___ day of July, 2017.

E/S/ JOHN M. LYNCH

20